in order that the validity of the assignment might take effect from the original execution. Hardmann v. Bowen, 39 N. Y. 196; Rennie v. Bean, 24 Hun, 123. I do not think the cases cited by the counsel for the company, construing other provisions of the general assignment act as directory only, militate against the authority of the cases cited, or undertake to criticise their effect. The proper execution by a corporation of a general assignment, and its recording so as to give public notice, are so surely matters of grave substance that we must infer that the legislature designed them to be mandatory. I am therefore constrained to hold that the attaching creditors obtained the preferential lien by authority of their legal proceedings, and must be first paid out of the assets of the company by the assignee.

Ordered accordingly.

(20 App. Div. 292.)

## WEBER v. BUFFALO RY. CO.

(Supreme Court, Appellate Division, Fourth Department. July 29, 1897.)

1. INDEPENDENT CONTRACTORS—COLLATERAL NEGLIGENCE.

The mere fact that a person has the right of supervision of work being done for him by an independent contractor does not itself render him liable as principal for the negligent acts of the latter, unless he ordered them.

2. LIABILITY FOR DUTIES DELEGATED TO AGENT.

A street-railway company applied to the state for permission to reconstruct a bridge over a canal, and permission was granted on condition that it should be responsible for and pay all damages arising to the state or citizens in consequence of the reconstruction. The terms were accepted, and the work of reconstruction given to an independent contractor. Through the contractor's negligence in keeping the roadway in safe condition, plaintiff was injured. *Held*, that the railway company, having assumed the duty of the state to keep the roadway in proper condition, could not devest itself of that duty, and liability arising thereunder, by delegating the work of reconstruction to an independent contractor, and hence it was liable for the injuries.

Appeal from trial term, Erie county.

Action by Joseph Weber against the Buffalo Railway Company. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

C. S. Crosser, for appellant.
Porter Norton, for respondent.

GREEN, J. This action was brought to recover damages for injuries alleged to have been sustained by the plaintiff on the 12th day of October, 1891, by reason of the defendant's negligence. The negligence imputed to the defendant is that a pile of planking and other materials was left unlighted and unguarded in the approach to a public bridge over the Erie Canal in Main street, in the city of Buffalo, against which the plaintiff, while going to a fire as a member of the fire department of the city, was driven. This unguarded pile was left in the condition it was on the night of the accident by a contractor, to whom the defendant had let the contract of laying its tracks across the bridge. The defense on the trial was that the negligence complained of was the act of an independent contractor, over

whom the defendant had no control. The defendant operated a street-surface railroad in the city of Buffalo, and this railroad crossed the Erie Canal upon a bridge which was the property of the state, and under the supervision and control of the superintendent of public works and other state officials. Prior to the year 1891, horse power was used for the purpose of propelling defendant's cars; but upon the adoption of electricity as a motive power it became necessary that the bridge should be reconstructed, so as to admit of the passage of heavy motor cars, and the defendant contracted with the Kellogg Iron Works for the performance of the work. The contractor agreed, among other things, to protect and save harmless the company from all damages "to persons or property of the public happening through the operations of the contractor." It appears from the evidence that a part of the planking of the bridge had been removed and piled in the street at right angles across the car tracks, at a point from two to eight feet back from the bridge. This pile of planks was three or four feet high. The street, as it crossed the bridge, consisted of several foot and drive ways; and at the time of the accident the central and next easterly passages were torn up in the manner described. The bridge was in this condition on the night or early morning of the date aforesaid, when the plaintiff and others, being on their way to a fire, in answer to a call, and riding in a hose cart southerly on Main street, collided with this obstructing pile of planks, whereby the plaintiff was thrown violently out and injured. Prior to the performance of any work upon the bridge, the defendant applied for and procured a permit from the superintendent of public works consenting to the reconstruction and strengthening of the bridge. The permit was granted upon the condition that the company "shall be held liable for and shall pay the damages that may occur or arise, either to the state or to individuals, in consequence of the reconstruction and strengthening of said canal bridge," and that an acceptance of the permit by the company "shall be deemed a covenant for the faithful performance of all the conditions and requirements herein contained." It was also provided that all work should be under the supervision of the superintendent, or an inspector to be appointed by him, upon plans and specifications approved, and the salary of the inspectors to be paid by the company. It is provided that no bridge shall be constructed across any canal without first obtaining, for the model and location thereof, the consent in writing of the superintendent of public works. 1 Rev. St. (8th Ed.) p. 772. And it is made the duty of such superintendent "to cause to be inserted in all contracts for work or repairs on the canals, a clause requiring the contractor to pay all damages arising to the state, or to any individual, by reason of the negligence, default or misconduct of such contractor in the performance of such contract." Laws 1866, c. 836; 1 Rev. St. (8th Ed.) pp. 742, 743. In the present case the relation of master and servant did not exist between the company and the contractor, but the true relation was that of principal and contractor. It is true that the company had the right of superintending and supervising, by its agents, the execution of the work, and giving directions in relation thereto; but the decisions show that these circumstances do

not of themselves render a principal liable for the negligent act of the contractor, unless it was brought about by the order of the principal.

But the important question still remains whether the plaintiff has not shown that the company owed such a duty towards him that it could not, by delegating that duty to a contractor, escape liability thereunder should the contractor be guilty of negligence in the performance of the work which he had contracted to execute. A preliminary inquiry concerns the statutory duties and liabilities assumed by the state itself in respect of the canals, as well as those imposed by statute upon contractors with the state. By chapter 321, Laws 1870, jurisdiction was conferred upon the canal appraisers (now board of claims) to hear and determine all claims against the state of any and all persons and corporations for damages alleged to have been sustained by them from the canals of the state, or from their use and management, or resulting or arising from the negligence or conduct of any officer of the state having charge thereof, or resulting or arising from any accident or other matter or thing connected with the canals; but no award shall be made unless the facts proved shall make out a case which would create a legal liability against the state were the same established in evidence in a court of justice against an individual or corporation. 1 Rev. St. (8th Ed.) p. 736. If the state itself had undertaken, through its officials, the reconstruction or alteration of this bridge, it is clear that a duty would be imposed upon the state to erect or place proper and sufficient safeguards for the protection of the traveling public; and for the nonobservance or nondischarge of such duty, or through misfeasance in its discharge, an action would lie at suit of the party injured against the state. Sipple v. State, 99 N. Y. 284, 1 N. E. 892, and 3 N. E. 657; Rexford v. State, 105 N. Y. 229, 11 N. E. 514; Bowen v. State, 108 N. Y. 166, 15 N. E. 56; Wordman v. State, 127 N. Y. 397, 28 N. E. 20; Locke v. State, 140 N. Y. 481, 35 N. E. 1076.

In Little v. Banks, 85 N. Y. 258, 263, this broad proposition was laid down:

"Contractors with the state, who assume, for a consideration received from the sovereign power, by covenant, expressed or implied, to do certain things, are liable, in case of neglect to perform such covenant, to a private action at the suit of the party injured by such neglect, and such contract inures to the benefit of the individual who is interested in its performance. Weet v. Village of Brockport, 16 N. Y. 161, note; Robinson v. Chamberlain, 34 N. Y. 389; Insurance Co. v. Baldwin, 37 N. Y. 648; Johnson v. Belden, 47 N. Y. 130; City of Brooklyn v. Brooklyn City R. Co., Id. 476; McMahon v. Railroad Co., 75 N. Y. 231; Conroy v. Gale, 5 Lans. 344, 47 N. Y. 665. The ground upon which these decisions are founded is a broad principle of public policy essential to the public welfare."

And see, also, Wainwright v. Water Co., 78 Hun, 146, 150, 28 N. Y. Supp. 987; Cook v. Dean, 11 App. Div. 125, 42 N. Y. Supp. 1040; Light Co. v. Van Vranken, 11 App. Div. 420, 429, 42 N. Y. Supp. 339.

In French v. Donaldson, 57 N. Y. 496, 5 Lans. 293, the court observed:

"Whatever doubts, if any, have existed since the case of Adsit v. Brady, 4 Hill, 630, followed and affirmed in Robinson v. Chamberlain, 34 N. Y. 389, and

other cases, in relation to the duty of a contractor for canal repairs or of his liability to an individual who has sustained damages by reason of a defect in a bridge over a portion of the canal he had, prior to the legislation of 1866 and 1867, contracted to repair or keep in repair, are disposed of by the legislation of those years." 1 Rev. St. (8th Ed.) pp. 742, 743.

In McMahon v. Railroad Co., 75 N. Y. 231, this doctrine was laid down:

"A liability may arise in two ways: First, from the defendant's having contracted with the municipality to do, instead of it, the duty which was upon it, to keep the street safe for the passage of the public, and, by neglect to do that duty, having given cause of action against the municipality for neglect, then action will be directly against the defendant therefor, instead of first against the municipality, so as to avoid circuity of action (City of Brooklyn v. Brooklyn City R. Co., 47 N. Y. 475); and, second, from the defendant's voluntarily interfering and undertaking to make the way safe, and so inefficiently doing it as to leave it unsafe, and at the same time so as to permit and tempt passage over it."

The defendant having contracted with the state to perform this duty in its stead, and to pay all damages that may occur or arise to individuals in consequence of its nonperformance, or inadequate performance, the question for determination is whether the company may relieve itself from the obligations imposed by the contract, and absolve itself from all responsibility to the traveling public, by entering into a contract with another to perform such duty. In other words, may it avoid the duty in question, and the consequent liability to persons who suffer injury from its neglect, by bringing another contractor into a stipulation that he will perform such duty? It should be observed that the duty is not only assumed by the contract with the state, but it is also imposed by the statute; and not only did the superintendent possess the legal power to insert this contractual provision in the permit granted (Little v. Banks, 85 N. Y. 258), but it was also his duty to do so. True it is that the defendant entered into no contract with the state for the reconstruction of the bridge, but, having received permission to alter and reconstruct a public work, to subserve its own private purposes, it assumed the same duty to the state, and the same responsibility to individuals, imposed by the statute upon contractors with the state, at least in respect to the safety of the public streets. The defendant therefore undertook to perform a statutory duty in respect to the public highway. The state would be bound to place proper safeguards for the protection of the traveling public, and the company undertook to do the same by its covenant.

If this construction be correct, then the defendant was liable for damages occurring from its neglect or failure to perform this duty, as it would be for any other neglect of duty. The company stands exactly in the position of the state, and is equally liable for its negligence in this regard. When it assumed the duties imposed by the permit, it made itself liable for all injuries resulting from its nonperformance or insufficient performance. The company could not relieve itself from the obligation imposed by its covenant with the state by contracting with another to fulfill it. It was an imperative duty required by the permit, and the company was not absolved from its duty and responsibility because it employed a contractor to

do the work, who assumed to protect and save harmless the company. A failure to safeguard an excavation or opening in a public highway or bridge by those who have assumed that duty from the state, makes the party who has assumed the obligation liable to an action at the suit of any one who has sustained a special damage. The company was not bound, in point of law, to do the work itself; that is, by servants of its own. There is nothing to prevent it from employing a contractor to do the work for it; but the company cannot, by employing a contractor, get rid of its own duty to other people whatever that duty may be. If the contractor performs the company's duty for it, it is performed by the company through him, and it is not responsible for anything more. It is not responsible for his negligence in other respects, as it would be if he were the company's servant. Such negligence is sometimes called casual or collateral negligence. If, on the other hand, the contractor fails to do what it is the company's duty to do, or get done, its duty is not performed, and it is responsible accordingly. In Dalton v. Angus, 6 App. Cas. 740, 829, Lord Blackburn thus laid down the law:

"Ever since Quarman v. Burnett [6 Mees. & W. 499], it has been considered settled law that one employing another is not liable for his collateral negligence, unless the relation of master and servant existed between them; so that a person employing a contractor to do the work is not liable for the negligence of that contractor or his servants. On the other hand, a person causing something to be done, the doing of which casts on him a duty, cannot escape from the responsibility attaching on him of seeing that duty performed by delegating it to a contractor. He may bargain with the contractor that he shall perform the duty, and stipulate for an indemnity from him if it is not performed, but he cannot thereby relieve himself from liability to those injured by the failure to perform it."

Lord Blackburn, in this passage, contrasts a contractor's negligence which he calls "collateral" with failure on the part of a contractor to perform the duty of his employer. For the first the employer is not liable; for the second he is, whether the failure is attributable to negligence or not. See, also, Hughes v. Percival, 8 App. Cas. 446.

It is not easy to avoid mistakes in applying this, or, indeed, any other, principle to difficult cases. Neither is it easy to express the principle in terms which will apply to all cases. Still, as the very nature of the work which the company here undertook to do involved danger to persons lawfully on the highway who might approach the bridge in the nighttime, and attempt to cross it, it was bound to see that proper safeguards or warnings were provided while the work was going on, so as to afford reasonable protection to the public. It has been repeatedly held that a municipal corporation is not relieved from its obligation in this respect because it has employed a contractor to do the work, and the contractor stipulates to adopt all necessary precautions for the prevention of accidents during its progress, and to save the city harmless from all claims for injuries which may be incurred. Storrs v. City of Utica, 17 N. Y. 104; McCafferty v. Railway Co., 61 N. Y. 178, 183, 202; King v. Railroad Co., 66 N. Y. 181, 185; Brusso v. City of Buffalo, 90 N. Y. 679; Turner v. City of Newburgh, 109 N. Y. 301, 305, 306, 16 N. E.

344; Dressell v. City of Kingston, 32 Hun, 533; Pettengill v. City of Yonkers, 116 N. Y. 558, 22 N. E. 1095; Scanlon v. City of Watertown, 14 App. Div. 1, 43 N. Y. Supp. 618. The ratio decidendi of these and other analogous cases is that, as the duty was imposed upon the defendant by law, he or it could not escape liability by delegating the performance of the duty to a contractor, for the obligation was imposed upon the defendant to take the necessary precautions to insure that the duty should be performed, and it was incumbent upon the defendant to see that these operations were safely carried out by the contractor. In Engel v. Eureka Club, 137 N. Y. 100, 104, 32 N. E. 1052, 1053, Andrews, C. J., states that there are well-understood exceptions to the maxim "Qui facit per alium, facit per se." "Cases of statutory duty imposed upon individuals or corporations; of contracts which are unlawful, or which provide for the doing of acts which when performed will create a nuisance,—are exceptions. In cases of the first-mentioned class the power and duty imposed cannot be delegated so as to exempt the person who accepts the duty imposed from responsibility; and in cases of the second class exemption from liability would be manifestly contrary to public policy, since it would shield the one who directed the commission of the wrong,"—citing Storrs' Case, and others. If the person for whom the work is done is under a pre-existing duty or obligation to have the work done in a particular manner, he cannot be discharged from that duty by creating between himself and another the relation of employer and contractor, and so cast upon the latter the burden of his own responsibility. He is himself bound to see that the duty is discharged. Dwight, C., in McCafferty v. Railroad Co., 61 N. Y. 186.

In Flynn v. Railroad Co., 49 N. Y. Super. Ct. 60, 62, 67, it was held that:

"The nature of the work itself done for the defendant in making these excavations in the public streets was dangerous, and the company could not escape the responsibility for putting the street in a condition dangerous to travel at night by interposing any contract which they had made for doing the very thing which caused the damage,"—citing the Storrs Case.

Upon the same principle, we apprehend, must the decision of the present case be founded. A duty was imposed by law upon the defendant towards the plaintiff, as one of the public, not to interfere with the right which the plaintiff possessed of using a public highway in such a manner as to impede or injure him when passing along it. The defendant is liable for the breach of the duty thus imposed upon it, although the act or default which caused the injury may have been the act or default of the defendant's contractor, and not of defendant itself. The negligent act or omission, if established, constituted an unlawful invasion of the plaintiff's right of transit over the public highway. It appears clear enough to us that, under the circumstances of this case, a duty was imposed upon the defendant which it could not evade by employing a contractor to do the work. It could not get rid of the responsibility thus cast upon it by transferring that duty to another. It was not competent to get rid of such a duty by imposing it upon an independent contractor. A duty rested upon the company, therefore, to insure such precaution in doing

the work as to render the highway reasonably safe against the possibility of accidents to the traveling public. This duty, it is assumed, was not performed. It employed a contractor to perform the duty for it, but the contractor failed to perform it. It is impossible, we think, to regard this as a case of "collateral negligence." An important fact to be observed is that the defendant corporation is vested with an extensive franchise or privilege in respect of the use of public streets and bridges, and may be said to be, in a sense, in continuous possession and control of them. It is bound to keep in repair a portion of the streets, and has other duties to perform towards the public in respect of their use as a street railroad. In consideration of a license directly from the state to do what otherwise would be unlawful, and a public nuisance, it undertook to perform the duties imposed by the state upon itself, and to indemnify it against the liability for damages sustained by any individual.

In view of the provisions of chapter 836 of the Laws of 1866, and the authorities heretofore referred to, it must be held that the duty in question was one that the company could not relieve itself from liability for its own nonperformance by interposing an independent contractor between itself and the general public. We conclude, therefore, that the learned trial justice erred in directing a verdict in favor of the defendant, and that the judgment entered in accordance with such direction must be reversed.

Judgment reversed, and a new trial ordered, with costs to abide the event. All concur.