[Civ. No. 6696. Second Appellate District, Division Two.—July 7, 1931.]

CAROLINE LIPPMAN, Respondent, v. SUBWAY TERMINAL CORPORATION (a Corporation), Appellant.

W. I. Gilbert for Appellant.

Kirtland I. Perky and Ralph W. Eckhardt for Respondent.

ARCHBALD, J., *pro tem.*—Appeal by the defendant from a judgment in favor of plaintiff for damages alleged to have been sustained by her in the raising of a sidewalk freight elevator maintained in the basement of a building owned and operated by the corporation. There is no conflict in the evidence as to how the accident occurred, although there is as to the extent of the injuries.

Defendant leased to the Louis K. Liggett Company a portion of the ground floor of its building located on the west side of Hill Street between Fourth and Fifth Streets in the city of Los Angeles, with right to sublease any portion thereof except that described as ''the drugstore space''. Concurrently with the execution of said lease a supplemental agreement was entered into between the parties thereto with regard to the use of the sidewalk elevator above mentioned, the material portion of which reads as follows: ''In common with other tenants and occupants of the building and this corporation, you are to have free use of the sidewalk freight elevator on Hill street when the same is completed and accepted by us; when used for your purposes the elevator shall be operated by your own employees, at your own risk, on your own responsibility and without liability to this company.'' Subsequently the lessee company sublet a portion of the leased premises to the Subway Electric Company. At the top of the elevator shaft trap-doors were constructed in the sidewalk which were flush with the sidewalk when closed, but which automatically opened with the raising of the elevator. Walking on the sidewalk above, plaintiff stepped on the doors at the time when an employee of said Subway Electric Company was raising the elevator, by reason whereof plaintiff alleges she was caused to fall, resulting in the injuries for which she brought action, naming several defendants. Judgment, however, ran against the defendant Subway Terminal Corporation alone.

Appellants contends: (1) That the evidence is insufficient to sustain the findings and judgment, for the reason that it shows without contradiction that an employee of the Subway Electric Company operated the elevator at the time, for which appellant cannot be held responsible; (2) that the trial court erred in the admission of certain evidence over defendants' objections and in rejecting evidence offered by defendants and (3) that the damages awarded are excessive.

Unquestionably the proximate cause of the accident was the negligent operation of the elevator and not any defect in its construction.

The elevator was not leased to said Liggett Company and control of the same was retained by appellant. The latter's engineer had charge of the machinery used in con-

nection with the building, including "one piece of equipment known as the sidewalk elevator on Hill street". The engineer testified that the Subway Electric Company "had space in there and used this elevator. . . . I have seen them several times". Asked if the Subway Terminal Company ever operated the elevator, the witness said: "No, sir. Q. It was operated by the people who were moving the goods up and down? A. Yes, sir." So it would seem not only was the right to sublease a portion of the premises given to the Liggett Company and permission given to said company "in common with other tenants and occupants of the building" to use said elevator, but that its subtenant, an occupant of the building, was using the elevator with the knowledge of the employee of the Subway Terminal Corporation in charge thereof. There would therefore appear to be no question but that such subtenant had permissive use of the elevator at the time of the accident. It also appears that at and prior to the time of the accident appellant kept a sign posted in the elevator reading as follows: "Those using this elevator assume all risk and responsibility in doing so. Be sure you take all necessary measures to protect people using sidewalk above elevator." Under such circumstances is the owner liable for the negligence of such operator?

An interesting case is that of *Bardel* v. *Standard Oil Co.,* 218 App. Div. 145 [218 N. Y. Supp. 36, 37], where the owner had instructed the tenants not to operate the elevator without first notifying the fireman of defendant, who would then station a man on the sidewalk to warn pedestrians, the court saying: "Since the defendant remained in control of the building and the elevator in question, the duty devolved upon it to see that they were operated without negligence. If the defendant had relinquished all control over the elevator a different question would arise. As long, however, as the defendant chose to remain in control of the elevator, so that the same could be used in common by the tenants, the defendant took with this control the obligation to see that the elevator was operated without negligence, and no arrangement made by the defendant with a third party could relieve it from this obligation. In other words, the defendant turned the elevator over to be operated by the tenants in common, accompanied by direc-

tions to operate it in a particular manner with reference to safeguarding the opening in the sidewalk. A disregard of the instructions still left the operation of the elevator within the power of the tenants, pursuant to the permission of the defendant, and made the defendant liable for injuries due to negligent operation with reference to said opening. · The duty to uncover the sidewalk with due regard to the safety of pedestrians the defendant could not escape by an attempted delegation, while the elevator at the same time was operated with its permission. . . . The respondent relies on a number of cases which are claimed to absolve it from liability upon the ground that at the time of the accident the defendant was not in actual control of the elevator, since it was being operated by the tenant. The respondent overlooks the fact that the defendant was still in general control, so that its permission to all its tenants to make common use of the elevator would be valid, and that the tenant was operating the elevator through the respondent's permission, though disregarding one of the directions in connection with such operation. The important fact in the case is the retention by the defendant of the control of the elevator for the common use of the tenants. The respondent quotes from *Scott* v. *Curtis*, 195 N. Y. 424 [133 Am. St. Rep. 811, 40 L. R. A. (N. S.) 1147, 88 N. E. 794], as follows: 'When the removal of a cover from a coal hole *by the owner's permission* creates danger to persons passing along the sidewalk the owner is liable for any negligence in failing to see that proper safeguards or warnings are provided to reasonably protect the public from such danger. (*Weber* v. *Buffalo R. Co.*, 20 App. Div. 292 [47 N. Y. Supp. 7]; *Mullins* v. *Siegel-Cooper Co.*, 183 N. Y. 129 [75 N. E. 1112].)' The respondent italicizes 'by the owner's permission', apparently with the thought that the case at bar is distinguished, in that the elevator was used without the defendant's permission. It appears, however, that the defendant's permission was present in the case at bar, providing the tenants safeguarded the opening. This duty of safeguarding the opening, however, the defendant, as noted above, could not delegate to the tenant." The tenant in that case, as in this, opened the elevator shaft without placing a man on guard. It also appears in the Bardel case that there was a warning bell which was supposed

to ring when the elevator was raised, but which was out of repair and did not operate at the time in question. The court does not allude to this claimed defect in its reasoning, but fixes the liability on the broad ground of the retained control. And well it might, as it would seem that a bell under the sidewalk which rang only as the elevator was raised was not such a piece of equipment the lack of which could possibly be a proximate cause of the accident, which must have occurred simultaneously with the warning the bell was supposed to give.

(1) Under the authorities it would seem that it is not so much ownership as control of property that creates legal liability for its negligent use, for where the landlord leases the premises in their entirety he is not liable for the negligent operation thereof by the lessee. (*Rider* v. *Clark*, 132 Cal. 382 [64 Pac. 564].) The authorities cited seem to support the judgment in this case as well as to show that the conditions imposed by the owner in the permission given to use the elevator, as well as in the notice posted therein, are of no avail so far as avoiding liability to one properly using the sidewalk who is injured by the negligence of an operator using such elevator with the owner's consent. Appellant urges that the evidence shows no such consent, but in our opinion it supports such inference.

(2) Over appellant's objection the court permitted the plaintiff to introduce ordinance No. 20449, as amended by ordinance No. 31469, both new series, of the city of Los Angeles. Such ordinances in substance make it unlawful to construct or maintain any permanent opening in any sidewalk unless such opening is covered with metal trapdoors, the side or ends of such doors nearest the curb to be not less than four feet from the outer edge thereof, and provided also with metal guards the height of such doors when opened, specifying how such guards shall be constructed. It is also provided by the amendment that it is unlawful "to open any such doors, or to cause or permit the same to be opened or remain open, unless such a metal guard is placed along the edge of and on each side of such opening and so maintained during such time as such door shall remain open; provided, however, that such metal guard need not be placed or maintained along the side of such opening on which goods, wares, merchandise or other

articles are being removed from or taken into the space beneath such opening, if a person is stationed on such side of such opening for the purpose of warning passers-by and of preventing accidents'', penalties being provided for a violation of such ordinance. It is respondent's theory, apparently, that ordinance requires placing such metal guards on the four sides of such opening before raising the doors. The trap-doors referred to opened against the sidewalk traffic and protected the opening in those directions, and the owner had two metal guards which were to be used in closing the openings between the upright sides of the two doors. In our opinion that is all the ordinance requires. It would seem that with the hinged doors in place there could only be two sides of the opening exposed when they are raised, and such doors as the owner had provided in this case, when placed, would be along the edge of and on each side of the opening. The proviso above quoted specifies that on the side of the opening through which goods or other articles *"are being removed"* such metal guard need not be placed or maintained, if some person be stationed on such side to give warning. In other words, it would seem to be for the purpose of protecting the *opening* and not to prevent the doors from doing possible injury that the ordinance was adopted; and while it would seem that under such circumstances the ordinance so introduced was not material, we do not see that the error was prejudicial, as the finding of the court was that the injuries sustained by plaintiff were the proximate result of the negligence of appellant "in permitting said sidewalk elevator and said doors to be operated without taking any precautions for the safety of pedestrains'', even though it also added "and in failing to see that the provisions of the ordinances of the city of Los Angeles were fulfilled''. The evidence in our opinion supports the first part of the finding, which in turn supports the judgment rendered, even though the additional finding is without such support.

 Ordinance No. 33512 (new series) and the elevator safety orders of the Industrial Accident Commission of the state were also introduced in evidence over appellant's objection. Section 332 of such ordinance provides in substance that every elevator for the carriage of freight or passengers shall be constructed and maintained in accordance with the

provisions of such ordinance and in accordance with the elevator safety orders referred to, and the orders in effect at the time provide that "any person, firm or corporation operating a sidewalk elevator must not open the sidewalk doors thereof without first posting a responsible person on the sidewalk at the said doors". The finding of fact made in connection with such ordinance and orders was "that at the time of the accident in·question the sidewalk doors were opened without first posting a responsible person on the sidewalk at the said doors". There was also a finding to the effect "that the operation of said elevator by said person last mentioned was negligent in that no person was stationed at said doors to warn pedestrains that said doors were about to open, and in that no precautions whatever were taken to avoid injury to pedestrains"; so it would seem that regardless of such ordinance and orders and the finding thereon there is evidence and a finding which support the judgment. Assuming, then, although not deciding, that the orders of the commission are not properly in evidence in this case, we fail to see that any prejudice resulted from the ordinance and orders having been so introduced.

▪■ An objection by plaintiff to a question asked by counsel for appellant of an expert witness who had examined plaintiff physically as to whether such expert saw anything "that would indicate she could not have pursued her vocation as a waitress at that time" was sustained by the court. The next question asked such witness was, "What did you find with reference to whether or not she was in a condition to work?" to which the former replied: "Clinically, I could find no evidence of any condition which could have been disabling," following which were other questions, the answers to which covered all the ground included in the question to which objection was sustained. In view of that fact, we fail to see where any prejudice resulted, even assuming, without deciding, that error was committed.

■ (3) The plaintiff testified that her back was wrenched and her left leg cut in two places to the bone; that she was in bed two weeks,·but did not get out of the house except once for two months after she was hurt. The accident occurred April 19th and she testified that she went to work the middle of June, but had to lay off on account of severe pains in her head and back; that she

had only been able to work off and on since; that she had "severe pains" in her head and back and was "very nervous"; that her health was perfect before the accident and that she had been under the doctor's care for almost two years since and was still under it, "but not for anything besides the result of this accident, so far as I know". Her doctor corroborated her testimony as to the injuries, to a large extent. The testimony of the expert produced by appellant is in sharp conflict with that of plaintiff. It was the province of the trial judge to weigh the evidence and decide such conflict. Having resolved the same in favor of plaintiff, we must give to the latter's case every inference that can reasonably be drawn in support of the judgment. (*Kimic* v. *San Jose-Los Gatos etc. R. Co.*, 156 Cal. 273 [104 Pac. 312].) Certainly the evidence quoted justifies the inference that plaintiff, as a result of the accident, suffered pains and headaches for a long period of time, to say nothing of her doctor's bill and loss of time. Under the circumstances we cannot say that the judgment rendered, $1750 damages and $48.50 costs, is excessive.

Judgment affirmed.

Works, P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 4, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 31, 1931.