*433 OPINION OF THE COURT
C. Stephen Hackeling, J.
The plaintiff, Lawrence Smith, commenced the above-referenced action dated January 16, 2004, against the defendant, Suffolk County Water Authority (hereafter Suffolk), seeking to recover $5,000 in damages suffered as a result of the accidental severing of his utility service at 16 Peconic Hills Court, Southampton, New York. This is a proceeding brought pursuant to article 18-A of the Uniform District Court Act. Suffolk has interposed defenses in the nature of general precedent which assert that employers are not liable for the acts of their independent contractors and which challenge the extent and provability of plaintiffs damages.
Undisputed Facts
The undisputed relevant facts before the court are as follows:
(1) Suffolk advised plaintiff that it was installing a water main adjacent to his property located at 16 Peconic Hills Court, Southampton, New York (hereafter the premises) (plaintiffs exhibit 1).
(2) Plaintiff advised Suffolk that he did not want to hook up to Suffolk’s water main.
(3) On or about July 3, 2003, plaintiff became aware that S&S Water Services accidentally severed the utility services to the premises as a result of an inaccurate “mark out” of plaintiffs utility lines conducted by Central Locating Service (hereafter CLS). (Exhibit 8.) CLS has defaulted in appearing in this action. The court’s small claim’s certified mail summons was returned as undeliverable.
(4) Electrical and well water service were restored to the premises on July 7, 2003, and telephone service several weeks later. The 4 inch by 4 inch excavation hole was filled seven weeks later.
(5) Suffolk is a governmentally created municipal authority.
Disputed Issues of Fact
(A) Suffolk does not concede the fact that plaintiff was renting the premises for $18,000 to three tenants for the summer season and was contractually bound to provide utility service to his tenants. Plaintiff also testified that his tenants were forced to relocate to other lodgings for the July 4th weekend and to throw out the contents of their refrigerator. Plaintiff alleges he *434 limited his damages to his tenants by consensually extending their lease for the premises through September. Plaintiff’s sworn testimony as to these facts was not rebutted or impeached at trial and is adopted as a fact in this proceeding.
(B) The parties also dispute the rental value of the lost Fourth of July weekend. Plaintiff contends that the value of his tenant concession (granting an extra month) was equal to $6,000 (one third of the $18,000 seasonal three-month rental). As an alternative, plaintiff introduced evidence that the nearby Southampton Inn charges $489 per night for a room during the July 4th weekend or $999 for a suite for the weekend. (Exhibit 9.) Suffolk argues that plaintiff’s one-month tenant concession was overly generous and that only the actual value of the lost July 4th weekend may be considered. The court agrees that the more accurate measure of damages would be to value the actual lost four-day weekend and finds that the July weekend suite rental of $999 is the most comparable.
(C) Suffolk does not dispute that its contractor S&S severed plaintiff’s utilities, but asserts that it dug where it was supposed to and that the damages were caused by a negligent “mark out” caused by either Key Span or LIPA who apparently employed Central Locating Service. (Exhibit 7.) CLS disputed its alleged negligence in a prior correspondence to the plaintiff. (Exhibit 14.)
(D) The parties dispute whether the digging and severance of the utilities occurred on plaintiffs property or in the Southampton municipal roadway right-of-way. The court concludes that the digging was on both plaintiffs property, and in the municipal right-of-way. (See exhibit D.)
The Issue
Is a municipal authority liable for the negligence of its contractors when excavating in and around a municipal roadway for the purpose of providing public water service?
The Law
Suffolk’s principal defense is the assertion that “[generally], an employer who hires an independent contractor is not liable for the negligent acts of the independent contractor.” (Steel v City of New York, 271 AD2d 435, 436 [2d Dept 2000].) The court’s research traces this rule of law to Blake v Ferris (5 NY *435 48 [1851]).[1] It is argued that absent a master/servant (employer/ employee) supervisory relationship, vicarious liability cannot be imposed upon a principal for the negligent acts of its independent contractors. (See, Melbourne v New York Life Ins. Co., 271 AD2d 296 [1st Dept 2000].)
A review of applicable case law reveals that this general rule of law is ancient. However, like most older judicially created rules, exceptions are also recognized over the passage of time. The Court of Appeals has opined that exceptions to the independent contractor rule which impose vicarious liability on an employer are grounded on public policy, such as the original public policy exception which spread liability to a principal “where a readily foreseeable danger is inherent in the work” assigned to the contractor. (Rosenberg v Equitable Life Assur. Socy. of US., 79 NY2d 663 [1992].)
An ancillary offshoot to the “readily foreseeable danger” exception was later established for “work performed in or adjacent to a highway.” (Downey v Low, 22 App Div 460, 461 [2d Dept 1897], citing Storrs v City of Utica, 17 NY 104 [1858]; Creed v Hartmann, 29 NY 591 [1864]; Vogel v Mayor, 92 NY 10 [1883]; see also Congreve v Smith, 18 NY 79 [1858].) This exception recognized that work performed in or adjacent to a highway creates an inherent danger to the public. (May v 11½ E. 49th St. Co., 269 App Div 180 [1st Dept 1945]; see also, Weber v Buffalo Ry. Co., 20 App Div 292, 300 [4th Dept 1897], citing Flynn v New York El. R.R. Co., 49 Jones & Sp 60 [1883].) It has been universally recognized back to the English common law that highways (and later other rights-of-way such as canals, sewers and railroads) enjoy a special status in that the sovereign state bears a duty to the public to keep them safe. (Storrs v City of Utica, 17 NY 104, 108-109 [1858], citing Hickok v Trustees of Vil. of Plattsburgh, 16 NY 161 [note] [1857].) The Court of Appeals in Storrs (at 108) recognized that even when the roadway digging to install a sewer was
“skillfully performed ... [a] ditch cannot be dug in a public street. . . without imminent danger ... If [casualties] occur, who is the author of the mischief?
Is it not he who causes the ditch to be dug, whether he does it with his own hands, employs laborers or lets it out by contract?”
Additionally, contractors with the State, who assume the *436 sovereign’s duty, are liable to injured third parties in a private action asserting neglect of the government’s duty. (Little v Banks, 85 NY 258 [1881].) Municipalities are treated the same as the State for the purposes of this rule of law. (McMahon v Second Ave. R.R. Co., 75 NY 231 [1878].)
Similarly, no lesser court than the United States Supreme Court has recognized a federal common-law principle that a municipal water company is liable for damages even though the negligence was that of one of its independent contractors. See St. Paul Water Co. v Ware (83 US 566 [1872]) wherein the Court expressly found an exception to the general New York vicarious liability rule established in Blake v Ferris (supra).
The Fourth Department, in a treatise decision, rendered over a century ago, established that it would be contrary to public policy for the “no contractor vicarious liability” exception to shield an entity who has assumed the sovereign’s duty of care. (See, Weber v Buffalo Ry. Co., 20 App Div 292 [4th Dept 1897].) The Weber court (at 298) quotes Lord Blackburn in Dalton v Angus (6 App Cas 740, 829) for the proposition that:
“[A] person causing something to be done, the doing of which casts on him a duty, cannot escape from the responsibility attaching on him, of seeing that [the delegated] duty [is] performed. He may bargain with the contractor that he shall perform the duty, and stipulate for an indemnity from him if it is not performed, but he cannot thereby relieve himself from liability to those injured by the failure to perform it.” (Internal quotation marks omitted.)
Likewise, the Weber court ratified prior precedent that a municipal road contractor “could not claim an immunity which the [municipal] corporation itself would not possess if it were doing the same work for the benefit of the public.” (See Downey v Low, 22 App Div 460, 462 [1897], quoting Creed v Hartmann, 29 NY 591, 596 [1864]; see also Storrs v City of Utica, 17 NY 104 [1858].) This proposition of “nondelegable duty” has been ratified on a multitude of occasions by the New York courts (see, Brusso v City of Buffalo, 90 NY 679 [1882]; Engel v Eureka Club, 137 NY 100 [1893]).
The task now arises for this court to reconcile Suffolk’s recent appellate authority with the afore-stated precedent. The court will disregard the holding in Melbourne v New York Life Ins. Co. (supra), as it involves a private insurance company’s contracting for an MRI test. The Second Department’s precedent, Steel v City of New York (supra), is more problematic. It involves an *437 injury in a public roadway, caused by a contractor’s negligence. However, the case at bar involves a municipal defendant (Suffolk), whereas Steel involves a private defendant, Time Warner Operations, Inc. Additionally, this plaintiff’s injury occurred while the sewer excavation was in progress while the Steel case involved a slip and fall injury occurring three years after the excavation.
Relying upon Rosenberg v Equitable Life Assur. Socy. (79 NY2d 663 [1992]), the Steel court found that the laying of underground cable was not an inherently dangerous activity sufficient to warrant an exception to the general “no contractor vicarious liability” rule.[2]
The dispositive question now arises. How does this court reconcile almost two centuries of common-law precedent with the Steel holding? The answer is found in Lord Blackburn’s logic. Unlike private parties, the sovereign has imposed a duty upon its municipal agents to be careful in the construction of its public highways and any accompanying public utilities. When a municipal authority such as Suffolk undertakes to provide public water via a public highway, it must do so without either its own or its contractor’s negligence. When municipalities construct public water projects, they act ministerially and are bound to a duty of exercising prudence and care. (Barton v City of Syracuse, 36 NY 54 [1867].)
This contractor immunity exception is not founded in the “inherently dangerous activity” doctrine but in the “nondelegable municipal duty” doctrine. The Second Department’s Steel holding is compatible with other precedent in that it involves a private entity (Time Warner Co.) providing a private utility (cable). Private utilities bear no special duty of care and can only be excepted from the “no contractor vicarious liability” rule if their activity is inherently dangerous. Under the circumstances of this case, Suffolk, by virtue of its own or Southampton’s town municipal sovereignty, is vicariously liable for any negligence occurring during its highway construction projects. Unlike the plaintiff, Suffolk has the ability to protect itself from liability via indemnity and contractor bond, and the State can always grant its municipal agents immunity if it would serve its public policy to enact such a statute.
*438 Damages
The record before the court establishes two scenarios of damages. The first is plaintiffs actual damage which was the loss of one month’s value of his rental for the September extension. Plaintiffs mitigation of his tenants’ loss appears reasonable, and the assessment of $6,000 damages (one third of $18,000 three-month rental contract value) appears logical. However, the court prefers to value the actual loss of the four day Fourth of July weekend.
The court finds that the $999 July weekend rate of the Southampton Inn (exhibit 9) for a suite is comparable to the loss of the residence. As all three tenants would be entitled to a similar suite, the court assesses damages at $2,997, and awards judgment to plaintiff as against Suffolk in that sum plus interest from July 3, 2003. The court does not have jurisdiction over codefendant Central Locating Service, Ltd.

. Several cases reported in this decision cite to much earlier common-law precedent which are not available to this court.

. It is noted that Rosenberg and Steel both involved nonmunicipal defendants. In fact, the Court of Appeals in Rosenberg (at 667) was dealing with the issue of whether the conducting of an EKG exam was “inherently dangerous.”